UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TERRI LYNN FERGUSON, | Case No.: EDCV 16-02186-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Terri Lynn Ferguson ("Plaintiff") filed a Complaint on October 15, 2016, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). On February 28, 2017 and May 12, 2017, the parties consented to proceed before the undersigned Magistrate Judge. In accordance with the Court's Case Management Order, Plaintiff filed a Motion for Summary Judgment ("Motion") on March 1, 2017, and Defendant filed a Cross-Motion

---

[1] Nancy A. Berryhill, now the Acting Commissioner of Social Security ("Defendant" or "Commissioner"), is substituted in as defendant. See 42 U.S.C. § 405(g).

for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Cross-Motion") on May 22, 2017. The Court has taken the Motion and Cross-Motion under submission without oral argument and as such, this matter now is ready for decision.

## I.

## BACKGROUND

On July 12, 2013, Plaintiff applied for DIB and SSI, alleging disability beginning August 14, 2012. (Administrative Record ["AR"] 161-70.) After her application was denied initially (AR 102-06), and on reconsideration (AR 110-16), Plaintiff requested an administrative hearing, which was held on March 25, 2015. (AR 35-61, 117.) Plaintiff, represented by counsel, appeared and testified at the hearing before an Administrative Law Judge ("ALJ"). (AR 35-61.) David Rinehart, a vocational expert ("VE"), also testified.

On May 13, 2015, the ALJ issued a written decision finding Plaintiff was not disabled. (AR 23-31.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 14, 2012. (AR 25.) The ALJ determined that Plaintiff suffered from the following severe impairments: lumbar spondylosis and degenerative disc disease; lumbosacral radiculitis; degenerative bone disease; and cervical spondylosis. (Id.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 27.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations. Plaintiff could: (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand and walk for six hours out of an eight-hour workday; (3) sit for six hours out of an eight-hour workday; (4) occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds; and (5) not be exposed to concentrated vibrations and hazardous work environments, such as dangerous

machinery or unprotected heights. (Id.) The ALJ further found that Plaintiff's RFC did not preclude her from performing her past relevant work as an assistant manager, storage facility, as actually and generally performed, and as a cleaner, commercial/institutional, as actually performed. (AR 29-30.) Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Social Security Act. (AR 30.)

Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR 17-19.) On August 19, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (AR 1-4.) This action followed.

## II.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). However, a court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

Lastly, even when the ALJ commits legal error, the Court upholds the decision where that error is harmless. Molina, 674 F.3d at 1115. An error is harmless if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

## III.
## DISCUSSION

Plaintiff contends that the ALJ: (1) failed to articulate specific and legitimate reasons for rejecting Plaintiff's credibility and (2) erred in concluding that Plaintiff could perform her past relevant work. As set forth below, the Court affirms the Commissioner's decision.

**A.    The ALJ properly assessed Plaintiff's credibility.**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Lingenfelter, 504 F.3d at 1036; Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also 20 C.F.R. §§ 404.1529(a), 416.929(a). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and

4

work record, among other factors." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." <u>Moisa</u>, 367 F.3d at 885 (citation omitted). However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

During the administrative hearing, Plaintiff testified that she worked as a storage facility manager until approximately August 2012, when she was let go because she could no longer do the work. (AR 40-41.) She explained that she could no longer work because she had severe pain throughout her whole body and was taking "a lot of medication." (AR 41.) She stated that she took medication for her symptoms, "but none of them seem[] to work," although she indicated that the Ambien helped. (AR 42, 45, 47.) She also used massagers, TENS, or transcutaneous electrical nerve stimulation, units, a back brace, heating pads, and a cane. (AR 40, 42, 44-45.) She reported that she drives once a month; tries to keep up with house cleaning, but it is difficult; does not do any grocery shopping; uses the microwave for cooking; and does her own laundry. (AR 39.) She also indicated that it takes her three hours to shower and get dressed because of the pain. (AR 56.) Plaintiff indicated that she could sit or stand for 10-15 minutes before it would become painful and she would need to adjust. (AR 40.) She also explained that sitting and driving are difficult because her legs went numb. (AR 50, 54.) She explained that she could walk as far as her residence to the car and had difficulty grasping things. (AR 40, 46.) She explained that her activity level had gone down over the years because of the pain and use of a cane. (AR 49.) According to Plaintiff, she spends 75% of her day lying down. (AR 56; <u>see also</u> AR 221 (indicating

that the pain is sometimes so bad that she stays in bed for weeks at a time).).

The ALJ found that Plaintiff had severe impairments consisting of lumbar spondylosis and degenerative disc disease; lumbosacral radiculitis; degenerative bone disease; and cervical spondylosis, but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not fully credible." (AR 28.) The ALJ provided legally sufficient reasons for rejecting Plaintiff's credibility.

First, the ALJ discounted Plaintiff's complaints regarding the severity of her symptoms and limitations as inconsistent with a conservative treatment plan. (AR 28.) The ALJ found that Plaintiff received routine, conservative treatment that generally consisted of pain medication. (Id.) She repeatedly reported to her physician that the medication relieved her pain. (Id.) The ALJ also noted that Plaintiff reported that her pain was relieved with use of a back brace, heat, ice, and lying down. (AR 29.) The ALJ reasoned that the absence of more aggressive treatment suggested that Plaintiff's symptoms and limitations were not as severe as she alleged. (Id.)

Substantial evidence in the record supports the ALJ's conclusion that Plaintiff received conservative, effective treatment. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra, 481 F.3d at 750-51; see also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (favorable response to conservative treatment, including medication, may undermine a claimant's assertions of disabling pain); Nguyen v. Astrue, 2011 WL 1226124, at *7 (N.D. Cal. Mar. 31, 2011) ("Evidence of conservative treatment, alone, is sufficient to discount credibility."). Here, Plaintiff's claims of debilitating, constant pain are contradicted by her repeated reports to her treating physicians that the pain was relieved by medication and other conservative treatments. (See, e.g., AR 237 (treatment note dated 3/11/13, indicating that "[t]he pain is relieved by

medications, rest" and "[t]he pain medications are helping"), 240 (treatment note dated 2/13/13, indicating that "[t]he pain is relieved by medications, rest" and "[t]he pain medications are helping"), 246 (treatment note dated 12/20/12, indicating that "[t]he pain is relieved by heat, medications" and "[t]he pain medications are helping"), 249 (treatment note dated 11/26/12, indicating that "[t]he pain is relieved by medications, heat" and "[t]he pain medications are helping"), 284 (treatment note dated 12/18/14, indicating that "[t]he pain is relieved by medications, heat" and "[t]he pain medications are helping"), 287 (treatment note dated 11/20/14, indicating that "[t]he pain is relieved by medications, heat, TENS unit, massage, ice" and "[t]he pain medications are helping"), 290 (treatment note dated 10/22/14, indicating that "[t]he pain is relieved by medications" and "[t]he pain medications are helping"), 293 (treatment note dated 9/24/14, indicating that "[t]he pain is relieved by medications, position change" and "[t]he pain medications are helping"), 296 (treatment note dated 8/26/14, indicating that "[t]he pain is relieved by medications, heat, massage, body brace" and "[t]he pain medications are helping").) See also, e.g., Medel v. Colvin, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (affirming ALJ's characterization of the plaintiff's treatment as conservative where his medical records showed that he had been "prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain." (internal footnote omitted)). She reported on a single occasion that the medication was not helping enough. In response, the treating physician increased the dosage, and at the next appointment, Plaintiff again reported that the pain was relieved by the medication. (AR 299-304.)

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [Social Security] benefits." See Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). This is particularly true where, as here, Plaintiff's treating

7

physician recommended a more aggressive treatment, i.e., an epidural steroid injection, and she rejected it. (See, e.g., AR 233, 236, 238.) See Nguyen v. Colvin, 2013 WL 6536732, at *4 (C.D. Cal. Dec. 12, 2013) (concluding that the ALJ's decision to discount claims of disabling pain because conservative treatment was inconsistent with those claims was supported by the record, particularly where her doctor had recommended a more aggressive treatment and plaintiff rejected it); Valdez v. Comm'r of Soc. Sec., 2011 WL 489694, at *5 (E.D. Cal. Feb. 7, 2011) (finding that the ALJ's credibility determination was supported by the record as a whole where the ALJ considered the fact that the plaintiff's pain was controlled with Methadone and the plaintiff declined more aggressive treatment, such as epidural steroid injections).

Plaintiff maintains that taking a narcotic medication is not a form of conservative treatment, citing to Tunstell v. Astrue, 2012 WL 3765139 (C.D. Cal. Aug. 30, 2012) and Nevins v. Astrue, 2011 WL 6103057 (C.D. Cal. Dec. 8, 2011). (Motion at 9.) However, both cases are distinguishable. In Tunstell, the medical records reflected that the plaintiff was a candidate for neurosurgical intervention because her pain medication did not provide her relief. 2012 WL 3765139, at *4. Similarly, in Nevins, the plaintiff actually underwent surgery for his shoulder. 2011 WL 6103057, at *5. Here, although Plaintiff reported at the hearing that her physician had discussed surgery (AR 48), there are no references to surgery in her medical records, and as explained, she repeatedly reported that her pain medication was helping to relieve her pain. Similarly, Plaintiff's use of a TENS unit does not reflect aggressive treatment. See Tommasetti, 533 F.3d at 1040 (ALJ properly discredited plaintiff's credibility because conservative treatment, including physical therapy, use of anti-inflammatory medication, a TENS unit, and a lumbosacral corset were effective); Morris v. Colvin, 2014 WL 2547599, at *4 (C.D. Cal. June 3, 2014) (ALJ properly discounted credibility in part because claimant

8

received conservative treatment, including use of TENS unit and Vicodin).

Plaintiff also refers to the additional treatment note dated April 24, 2015 submitted to the Appeals Council. (Motion at 9.) Again, however, nothing in this treatment note reflects a recommendation for more aggressive treatment. (AR 322-24.) Indeed, this treatment note reflects no abnormalities of the spine or extremities and normal range of motion of the lower back. (Id.) Plaintiff's conservative treatment was a clear and convincing reason to discount the credibility of her statements.

Next, the ALJ rejected Plaintiff's credibility because the objective and clinical medical evidence did not support her allegations of disabling limitations to the extent alleged. (AR 28.) Although a lack of objective medical evidence cannot be the sole reason for rejecting a claimant's testimony, it can be one of several factors used in evaluating the credibility of Plaintiff's subjective complaints. Rollins, 261 F.3d at 856-57. The ALJ noted that an MRI performed in November 2012 revealed findings that included disc protrusion at L3-4; a right paracentral disc protrusion at L5-S1; neuroforminal stenosis; and hypertrophy at L3-4, L4-5, and L5-S1. (AR 28; see also AR 250.) Plaintiff's June 2013 physical examination revealed limited positive findings that included tenderness in the lumbar paraspinal muscles and pain with flexion and extension of the spine. (AR 28.) The ALJ noted, however, that Plaintiff exhibited good range of motion in her bilateral lower extremities, had a negative straight-leg raising test bilaterally, and motor strength of five out of five. (Id.) As the ALJ indicated, subsequent treatment notes reflected similar findings. (Id.; see, e.g., AR 272, 275, 312.) This evidence was substantial and reasonably supported the ALJ's conclusion that Plaintiff's symptoms and limitations were inconsistent with the objective medical evidence. Accordingly, the ALJ properly relied on a lack of objective evidence to discount Plaintiff's credibility.

9

Finally, the ALJ found that "[s]ome of [Plaintiff's] reported activities since the alleged onset date are inconsistent with her alleged disabling functional limitations." (AR 28.) The ALJ summarized certain activities identified by Plaintiff in her testimony and during her psychiatric evaluation, "which included performing personal care, running errands, performing minimal household chores, preparing meals, watching television, and using the computer." The ALJ determined that these activities involved similar exertional levels and skills required of some jobs, suggesting that Plaintiff was capable of some work. (Id.)

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if [her] level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." Garrison, 759 F.3d at 1016. Here, the ALJ erred in relying on Plaintiff's reported daily activities because those activities were not inconsistent with her subjective complaints and did not suggest that she was capable of meeting the demands of work on a sustained basis. See Garrison, 759 F.3d at 1015-1016; Vertigan, 260 F.3d at 1049-50.

Plaintiff also contends that the ALJ's credibility determination was flawed because he gave "short shrift" to her good work history. Plaintiff essentially argues that someone with such a good work history would not stop

10

working for any reason other than actual disability, thereby bolstering the credibility of her subjective allegations. (Motion at 12 (citing to Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998).) While a claimant's work history may be deemed probative of credibility, work history is only one factor that the ALJ may consider. See Bray, 554 F.3d at 1227; see also Avila v. Astrue, 2011 WL 4457121, at *9 (E.D. Cal. Sept. 23, 2011) (rejecting claim that an ALJ failed to consider positive work history where the ALJ's credibility finding were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony" (citation omitted)); Miller v. Astrue, 2008 WL 4502111, at *9 (E.D. Cal. Oct. 7, 2008) ("although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, this Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). As another district court considering a similar issue explained, Schaal indicates that a "good work history *may* be deemed probative of credibility," but it "does not *require* an ALJ to credit testimony from a plaintiff with a 'good' work history." Smith v. Colvin, 2013 WL 1156497, at *7 (E.D. Cal. Mar. 19, 2013) (citing Schaal, 134 F.3d at 502). "Although the ALJ must consider a broad spectrum of evidence, including prior work record, an ALJ is not required to include a discussion of a claimant's work history in his or her determination." Gill v. Astrue, 2011 WL 6826728, at *5 (S.D. Cal. Dec. 28, 2011); see also Lamberson v. Astrue, 2012 WL 4494813, at *5 (C.D. Cal. Sept. 28, 2012) ("Even if Plaintiff's work history is commendable, Plaintiff has not cited any case law that requires an ALJ to elevate work history to a dispositive factor, or to discuss it in his ruling if it is not necessary to do so."). Plaintiff has not shown that the ALJ's failure to engage in a more elaborate discussion of her work history was error. See

11

Curry-Collins v. Berryhill, 2017 WL 2312351, at *6 (C.D. Cal. May 25, 2017) (even if the ALJ erred in failing to consider work history in credibility determination, the error was harmless because the ALJ articulated other specific, clear, and convincing reasons sufficient to support the finding).

Where, as here, an ALJ provides legally sufficient reasons supporting his credibility determination, the ALJ's reliance on erroneous reasons is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion . . . ." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks omitted). Since the ALJ articulated two other legally sufficient reasons supporting his adverse credibility finding, his reliance on Plaintiff's daily activities was harmless. See Nava v. Colvin, 2017 WL 706099, at *5 (C.D. Cal. Feb. 21, 2017) (since history of conservative treatment and lack of corroborating medical evidence were legally sufficient reasons supporting the ALJ's credibility finding, reliance on plaintiff's daily activities was harmless).

Accordingly, reversal is not warranted based on the ALJ's credibility determination.

**B.**   **The ALJ did not err in concluding that Plaintiff could perform her past relevant work.**

Plaintiff asserts that the ALJ improperly concluded that Plaintiff's past relevant work included work as a cleaner and that she could perform this past relevant work. (Motion at 13-16.)

"To determine whether a claimant has the residual capacity to perform [her] past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity." Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). The claimant has the burden to prove that she cannot perform her prior relevant work

"either as actually performed or as generally performed in the national economy." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). Plaintiff must demonstrate an inability to return to her former type of work and not just her former job. Villa, 797 F.2d at 798; see also 20 C.F.R. §§ 404.1520(f), 416.920(f).

Plaintiff contends that the ALJ's finding that she could perform her past relevant work as a cleaner is erroneous because the ALJ improperly segregated Plaintiff's past work according to the least strenuous work function, and identified an occupation that is beyond Plaintiff's functional capacity. (Motion at 13-16.) Specifically, Plaintiff contends that she never worked exclusively as a cleaner, but always as part of a job as an assistant manager, and thus, the cleaner job does not constitute her past relevant work. (Id. at 15.) In addition, Plaintiff contends that the VE's conclusion that a claimant with Plaintiff's RFC could perform the cleaner job, as actually performed, defies common sense because the blower used to clean a storage unit would weigh more than 20 pounds as would the items left in storage. (Id. at 16.)

Although "[i]t is error for the ALJ to classify an occupation 'according to the least demanding function,'" Carmickle, 533 F.3d at 1166 (quoting Valencia v. Heckler, 751 F.2d 1082, 1086 (9th Cir. 1985)), here the VE's classification of Plaintiff's past relevant work as a cleaner is consistent with her description of her former job. In the Work History Report, Plaintiff described her past work as an assistant manager. She explained that she managed the facility, including "keep[ing] the grounds up." This involved "[e]verything from sweeping up the area to picking weeds." (AR 195.) She reported that she "would have to lift various things that people left in their storage units," but tried to drag the items rather than lifting them, "due to the pain and inability to carry things." (Id.) At the administrative hearing, Plaintiff similarly testified she cleaned the property and units. (AR 40, 51.) These activities are consistent with the DOT's

13

description of the cleaner job, which involved, for example, keeping "premises of office building, apartment house, or other commercial or institutional building in clean and orderly condition." Dictionary of Occupational Titles, 381.687-014 Cleaner, commercial or institutional, 1991 WL 673257.

The ALJ concluded that Plaintiff could perform her past relevant work as a cleaner, as actually performed, at the light exertion level. (AR 30.) The ALJ based his finding on the VE's opinion that a hypothetical claimant could work as a cleaner as Plaintiff performed that past work, but not as performed in the national economy. (AR 30, 58.) Plaintiff contends that the VE's testimony was improper because it "defies common sense" that the blower Plaintiff would be required to use to clean a storage unit would weigh less than 20 pounds or that the items left in the unit weighed less than 20 pounds. (Motion at 16.) However, Plaintiff stated in the Work History Report that the heaviest weight she lifted was "[l]ess than 10 lbs," which was the same answer she provided in response to the question regarding the weight she "frequently lifted." (AR 195.)

Thus, the ALJ reasonably relied on the testimony of the VE in concluding that Plaintiff's past relevant work was that of a cleaner and that she could perform this past relevant work, as actually performed, particularly given that Plaintiff never objected to the VE's characterization of her past work. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (finding that "VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required.").

Moreover, even if the ALJ erred in finding that Plaintiff's past relevant work included the cleaner job, the error was harmless because the ALJ also found that Plaintiff could perform her past relevant work as an assistant manager, storage facility. (AR 29-30.) See Molina, 674 F.3d at 1115 (harmless-error principles apply in the Social Security Act context). Plaintiff appears to

14

argue that this finding was not supported by the VE's testimony because the only job identified by the VE based on the hypothetical posed by the ALJ was that of the cleaner job. (Motion at 15-16.) The Court disagrees. Although the VE's response to the hypothetical could have been more clear, his response, in context, reflected his conclusion that a claimant with Plaintiff's RFC could perform her past relevant work as both an assistant manager and cleaner. Specifically, after identifying Plaintiff's past relevant work as assistant manager, storage facility and cleaner, commercial/institutional, the ALJ then asked whether a claimant with Plaintiff's RFC could perform Plaintiff's past relevant work. The vocational expert replied, "Yes, with the cleaner job only as actually performed, but not as is performed in the national economy." (AR 57-58.) The Court concludes that the ALJ's conclusion that Plaintiff could perform her prior work as an assistant manager, storage facility both as actually and as generally performed is supported by the VE's testimony.

Accordingly, substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work.

## IV.

## ORDER

IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: July 7, 2017

JOHN D. EARLY
United States Magistrate Judge